UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X CIVIL ACTION  NO.  09 CIV 5446 (SHS)
LILIAN CASTILLA,
                                          **PLAINTIFF,**

      - against -
                                          **VERIFIED COMPLAINT**

CITY OF NEW YORK, NEW YORK CITY              **JURY DEMAND**
DETECTIVE OSCAR SANDINO, TAX ID #919673
INDIVIDUALLY AND AS A DETECTIVE
OF NEW YORK CITY POLICE DEPARTMENT,
AND POLICE OFFICERS JOHN DOE OFFICERS 1-10

                                  **DEFENDANTS.**
------------------------------------------------------------ X

        Plaintiff, LILIAN CASTILLA, by her attorney, Law Office of Jose A. Muniz, an as for her complaint against Defendants NEW YORK CITY ("CITY"); DETECTIVE OSCAR SANDINO, ("Sandino") individually, and New York City Police Department; Police officers John Doe 1-10, (Collectively "Defendants"), does hereby state and allege:

**I.**               **PRELIMINARY STATEMENT**

1.   Defendant, Oscar Sandino, with the help and knowledge of other New York City Police Officers, violated the Civil Rights of plaintiff Lilian Castilla, under 42 U.S.C. Sections 1983 and 1985; the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, and 5th Amendment to Due Process where defendant Sandino sexually assaulted and battered plaintiff Castilla in the New York City Police Department Precinct bathroom, on February 16, 2008.  That defendant Sandino sodomized plaintiff Castilla, against her will, while another detective stood outside the bathroom on guard, and the conspiracy to cover up this despicable behavior by defendant Sandino, continues.

## II.                **JURISDICTION AND VENUE**

1. That Jurisdiction is founded upon the existence of a Federal Question.

2. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom or usage of a right, privilege, and immunity secured to plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States (42 U.S.C. §1983) and arising under the law and statutes of the State of New York.

3. Jurisdiction is founded upon U.S.C. §1331 AND 1343(3) and (4), this being an action authorized by law to redress the deprivation under color of law, statute, ordinance, regulation, custom and usage of a right, privilege, and immunity secured to a plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

4. The matter in controversy exceeds, exclusive of interest and costs, the sum of value of SEVENTY FIVE THOUSAND ($75,000.00) DOLLARS.

## III.                **PARTIES**

5. That the plaintiff LILIAN CASTILLA is a legal resident of the United States and she is a resident of the City of New York, County of Queens, State of New York.

6. Upon information and belief, that at all times hereinafter mentioned, the defendant THE CITY OF NEW YORK, was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

7.  Upon information and belief, that at all times hereinafter mentioned, the defendant THE CITY OF NEW YORK, its agents, servants and employees operated, maintained and controlled the Police Department of the City of New York, including all the police officers thereof.

8.  Upon information and belief that at all times hereinafter mentioned, and on or prior to the February 16, 2008, defendant Detective OSCAR SANDINO was employed by defendant, THE CITY OF NEW YORK, as a Detective.

9.  Upon information and belief, that at all times hereinafter mentioned, and on or about February 16, 2008, defendants John Doe Officers 1-10 were employed by defendants the CITY OF NEW YORK.

10. This action arises under the United States Constitution, particularly under provision of the Fourth, Fifth and Fourteen Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1985 and the rights under the Constitution and laws of the State of New York.

11. Each and all of the acts of the defendants alleged herein were done by the defendants, their agents, servants and employees, and each of them, not as individuals, but under the color and pretense of the statutes, ordinance, regulations, customs and usages of the State of New York, and City of New York.

IV.      **FACTAL AND GENERAL ALLEGATIONS**

12. This action arises from the shameful acts of defendant Oscar Sandino a member of the Police Department of New York City and the conspiracy to cover it up, by other Detectives and Officers of the New York City Police Department.

13. Plaintiff seeks compensation for the unconstitutional and tortuous conduct of defendant Sandino, who sexually attacked plaintiff, Lilian Castilla, and other detectives and officers who witnessed or were aware of these events, yet failed to report what they knew, thereby creating a "blue wall" of silence and lies to obstruct justice and prevent the truth from surfacing, and police supervisors who failed to control subordinates, with a history of sexually abusive behavior. Ms. Castilla seeks redress against the City of New York for their deliberate indifference and negligence with respect to customs, policies and practices that permitted, condoned and preserved a "code of silence" environment in which sexually violent police officers and/or detectives believed they would be insulated from a swift and effective investigation, prosecution and conviction for even their most brazen acts of sexual abuse against female civilians. The inevitable result of this institutional indifference is the sexual attack upon plaintiff, Lilian Castilla.

14. The incident occurred on February 16, 2008, at approximately 10:00 p.m. at the 110th Precinct, in the City and State of New York, County of Queens, after the plaintiff was arrested, along with her significant other, Daniel Duverge, in their apartment, located at 89-21 Elmhurst Avenue, Queens, New York.

15. Defendant Sandino, along with other detectives and police officers, stormed into plaintiff's apartment on February 16, 2008, with guns drawn and pointed at plaintiff and her family, which included her mother and three children, at approximately 4:00 p.m., ostensibly to execute a search warrant. Plaintiff was in her bathrobe when the police entered the apartment.

16. Plaintiff's boyfriend, Daniel Duverge, was questioned while plaintiff, her children and mother looked on. Defendant Sandino directed plaintiff to get her children's clothing, since they were in pajamas. Plaintiff went and retrieved clothing for two (2) of her three (3) children, while defendant Sandino followed her.

17. Defendant Sandino, at some point, took plaintiff into a separate room, alone. Defendant Sandino radioed downstairs and stated "no female cop". Defendant Sandino looked at plaintiff, still in her bathrobe and told her she would have to get undressed in front of him. Defendant Sandino asked plaintiff: "Why are you doing this?" He said, "If I would see you in the street I would fucking eat you alive."

18. Plaintiff undressed in front of Sandino. She had on a black strapless bra and a black thong. Defendant made her turn around and then she was ordered to remove her bra and gave it to him. Plaintiff complied, as she covered her breasts with her other hand. Sandino ordered her to turn around again. He checked her bra and her clothing. As plaintiff started to get dressed, there was a knock on the door. It was a female officer. Defendant was surprised and said, "I thought there were no female cops" and left the room. The female officer and plaintiff were in the room, and Ms. Castilla asked her "what is going on?" She replied, "Sweetie I

5

don't know they just told me to come upstairs."

19. Sandino questioned plaintiff regarding her boyfriend, and his drug activities. Sandino threatened to take her kids away.

20. One and one half to two (1 ½-2) hours after the police entered the apartment, defendant Sandino ordered that plaintiff and her boyfriend be taken in separate cars to the Precinct.

21. Plaintiff was put in a burgundy or red colored SUV, in the back seat. Defendant Sandino was driving, while another detective sat in the front seat passenger's side.

22. The plaintiff was not taken to the Precinct; rather, she was driven around, and taken to a dead end street in Queens.

23. Defendant stated to plaintiff "you are so fucking calm… you know you are going to lose your kids."

24. Plaintiff was terrified at this point, that something would be done to her or her kids. Plaintiff started crying and told Sandino that "I didn't know what was going through my mind." Defendant then said: "this is what we're going to do. We are going back to your apartment and look for your cat. I have dogs that are going there and they will eat him up."

25. Defendant drove plaintiff back to her apartment building, and ordered the other detective to exit the auto.

26. Defendant turned to plaintiff and said: "what are willing to do for your kids?" Plaintiff responded: "what do you mean, anything?"

27. Defendant looked at plaintiff and stated the following, all in Spanish: "how did your children come into the world… you had to be bedded".

28. Defendant Sandino, prior to leaving plaintiff said to her: "you don't have to give me your answer now."

29. Defendant Sandino left and another detective entered the auto.  Plaintiff was then taken to the 110th Precinct in Queens.

30. Plaintiff was left rear handcuffed, in a cell for approximately 1 ½ hours.  A detective, who first name is John, was left to guard her.  This detective John, communicated with defendant Sandino, continuously.

31. Defendant Sandino arrived at the 110th Precinct and removed the handcuffs from plaintiff, and took her to an interrogation room. Sandino, alone with the plaintiff, asked her:  "what's your answer?"

32. Defendant Sandino took out a large manila envelope and removed various documents and a bag with white power.  He then stated to her: "who the fuck deals with dollar bills?"

33. Another detective entered the room, who plaintiff described, later to New York City Police Department, Internal Affairs, as having a pudgy-nose. Sandino told plaintiff, in this detective's presence, that they wanted her to be an  informant.
Plaintiff replied that she might be able to point out persons who her boyfriend had spoken to, but  knew nothing about his narcotic's business. Plaintiff was ordered not to speak with anyone, especially her boyfriend.

34. Sandino's partner said to plaintiff:  "you're going to lose your kids".  Upon hearing this, plaintiff broke down and cried.

35. Sandino's partner stated to plaintiff:  "I don't know what deal you worked out with him," referring to Sandino.  The other detective then left.

36. Defendant Sandino, now alone with plaintiff, started sharing personal things about himself, such as that he is married and has two (2) children, a son Jayden and daughter, Alexis.  Sandino compared his children to that of plaintiff, and how similar in ages they were.

37. Defendant Sandino, then told her "if you agree, I will rip up the papers." Defendant Sandino was referring to the Administration for Children Services (ACS), and that he would not contact them to remove plaintiff's children. Sandino then demanded "what is your answer?"

38. Plaintiff told Defendant Sandino, "I don't know, I am not that kind of girl." She further stated and told Defendant Sandino, that it would have been different if she knew him and things just happened naturally.

39. Defendant Sandino, stated "I like your taste of clothing" referring to the type of lingerie, that plaintiff had in her apartment. Sandino was referring to a Victoria Secrets bag he had searched, while  in her bedroom. She had received these personal items  as a gift. Defendant Sandino, then asked plaintiff what her favorite color was. Plaintiff answered yellow.

40. Defendant Sandino, then stated "You look too pale in yellow, I like blue, I want to see you in that blue piece", Plaintiff stated " you must do this to all the girls." Defendant shook his head no and said: "No, it's when I saw you,  I fucking wanted you."

41. Defendant Sandino then threatened plaintiff by saying the following, in sum and substance: that his kids will not live the life they deserve, referring to Sandino's two kids.  Defendant Sandino, then told her that something would  happen to her if she told anyone,  since he had her and her family's address.

41. Defendant Sandino, then advised her: "you don't need a lawyer this is what you are going to do;" and he proceeded to give plaintiff a two ($2.00) bill and a twenty $20. 00) dollar bill from plaintiff's own money and told her, in sum and substance: when you get out of Central Booking, take a cab. Defendant advised plaintiff, to tell the Judge at arraignment, that she lived at 55-14 69th Lane, Maspeth, New York, which is her brother's address, and not to use her Queens address. That she was to further mislead the arraigning Court, by telling it  that she was visiting at her boyfriends' apartment, on the night of the raid. Plaintiff was further directed, by Sandino to tell the state court that she didn't know that  her boyfriend was involved in narcotics.

42. Defendant Sandino directed her to the bathroom and accompanied her there. As he took  her to the restroom, Defendant Sandino handcuffed her again.

43. As they approached the bathroom, Sandino's partner,  John, was  directed to stay with plaintiff, while he entered the bathroom. As Sandino entered  the bathroom, his partner told him to be careful, the window was open.

44. Defendant Sandino came out of the bathroom and signaled to the plaintiff to enter.

45. Plaintiff entered one of the stalls and locked the door.  Defendant Sandino ordered her to unlock the door. As the plaintiff finished and began to exit, Sandino directed her to stay in the stall. He then asked her  "what is your answer?"

46. Plaintiff, fearful and helpless, responded: "No, not here."  Sandino told  her "this is  the safest place, no one can hear us".  He then orders her to pull down her pants. Sandino, then declares: "wow you have an earring down there".

47. Defendant turned around, with his back to plaintiff; he then faced her again, with penis erect and proceeded to sexually molest her; touching her vagina and other parts of her body; and finally sodomizing her.

48. After Defendant Sandino finished he stated:  "now I know I can trust you!."

49. Defendant Sandino gave plaintiff his personal cell number, by putting it on her phone.

50. Defendant Sandino told plaintiff that she had until Tuesday, February 19, 2008, to contact him. Sandino, expected to have sexual intercourse with the plaintiff.  He further told her that if he did not hear from her he would submit the paper work to the Administration for Children Services,  and have her children removed from her custody.

51. The following Tuesday, February 19, 2008, Sandino called plaintiff; she did not answer the call.  Later in the day, Sandino called plaintiff, again. Plaintiff, fearful, answered the phone.  Defendant Sandino inquired as to where she was and where they could meet.  He further directed  her to call him back later and let him know.

52. Plaintiff, subsequently, had a telephone discussion with her cousin, and later met her at the home of Martha Rodriguez.  Ms. Rodriguez is Daniel Duverge's aunt.

52. Plaintiff advised her cousin of the numerous phone calls, from Sandino, she had received since being released from jail.  She did not convey to her cousin the sexual attack.

53. Her cousin then called the defense attorney representing Mr. Duverge and advised him of    Sandino's calls to plaintiff.

54. The defense attorney, called Defendant Sandino, and requested that defendant not communicate with plaintiff.  Even after receiving a call     from   the   defense attorney, Sandino continued to call plaintiff.   Plaintiff refused to answer the phone, and/or return any of the calls.

55. Defendant Sandino called plaintiff's brother, Jose Castilla. The brother, upon Sandino's directive, called plaintiff and told her that Sandino wanted her to call him. If she did not call Sandino, that Sandino would make sure that ACS removed her children from her custody.

56. On February 19, 2008, plaintiff received a call from Yvonne McBride, a caseworker from ACS. An interview was scheduled for later the same day.  They met at plaintiff's parents' home.

56. While plaintiff's mother was being interviewed, Defendant Sandino and his partner, entered the apartment.  Defendant Sandino asked her, why she involved a lawyer.  Why did she provide the lawyer with his telephone number.  Sandino's partner said "you don't want to do that."

57. Plaintiff overheard McBride tell Sandino that plaintiff's case was not prosecuted; that she was released directly from Central Booking without seeing a Judge. Sandino advised Ms. McBride, that it was his case, and he could reopen it, if necessary. He further stated that his investigation of plaintiff was ongoing.

58. Defendant Sandino had a discussion with Ms. McBride. After this discussion he asked his partner to walk Ms. McBride to her car. Defendant Sandino took plaintiff into another room and told her that he would help her keep custody of the children. Sandino, while alone in the apartment with plaintiff, asked her why did she do this? Plaintiff stated, she got nervous and didn't know what to do.

59. Defendant Sandino stated to her "what did I tell you?" Sandino continued berating plaintiff and stated, in sum and substance: she was not supposed to tell anyone what happened or discuss anything about him.

60. Defendant Sandino, in order to further intimidate the plaintiff, took out a legal pad and read personal information about the plaintiff. He read the following: that she was Colombian; had a white dog; was a blond, weight 140 pounds.

61. Defendant Sandino showed her these papers, and the personal facts, to further intimidate her.

62. Sandino then said to her "I am here to help you" and in Spanish said the following "I am not here to do you harm". At some point, Defendant Sandino received a call from his partner and told him he would be right down. Defendant Sandino said to plaintiff "we need to speak."

63. The Queens District Attorney's office decided they would not bring criminal charges against plaintiff, she was released from Queens Central Booking on February 17, 2008. No criminal charges have ever been lodged against her.

64. Plaintiff had a follow-up appointment with ACS worker McBride, for drug testing. Upon completing that interview, Sandino called plaintiff and told her, "when you are done call me."

65. Plaintiff, for her own safety, recorded numerous phone calls and texts from Defendant Sandino.

66. Plaintiff recorded cell phone calls made by Defendant Sandino, from on or about February 23, 2008 through March 5, 2008.

67. Defendant Sandino made phone calls urging the plaintiff to get together with him; stating he would help her keep the kids.

68. Also, several of the recorded calls refer to the sexual attack in the bathroom.

69. On or about March 7, 2008, plaintiff met with Detectives from the Internal Affairs Bureau of the New York City Police Department. She provided them with copies of the audio and text messages.

70. On or about March 11, 2008, plaintiff was wired for recording. A meeting was set between plaintiff and Defendant Sandino, at the Buccaneer Diner in Astoria for approximately 7:00 p.m. Defendant Sandino met plaintiff at the diner.

71. The defendant was very suspicious, to the point where he threatened plaintiff and told her "if you are wired, I will pour water on you."

72. Plaintiff was so frightened that Defendant Sandino would harm her, that she had to be whisked away from the meeting.

73. Plaintiff provided all evidence and assistance to the New York City Police Department, Internal Affairs Bureau.

74. Defendant Sandino and the other officers have not been prosecuted.  Rather, Defendant Sandino still has his position as a New York City Police Detective.

75. No criminal charges of any type have been brought against Defendant Sandino, as a result of his actions and his criminal behavior against the plaintiff.

76. Upon information and belief, Defendant Sandino and other detectives and officers have provided false information to the District Attorney's Office and have obstructed justice in the investigation of the allegations made by the plaintiff.

77. Defendant Sandino acting individually, and together, agreed and conspired to obstruct justice and to conceal and cover-up the facts relating to his sexual assault of Lilian Castilla.

78. Defendant Sandino, acting individually, and together with other officers, agreed and conspired to obstruct justice and conceal and cover-up, their criminal actions, in the sexual assault of Ms. Castilla.

79. Defendant Sandino acting individually, and together, agreed and conspired to obstruct justice and conceal and cover-up the New York City Police Department Internal Affairs' finding on the sexual assault by Defendant Sandino against Ms. Castilla, and in their dereliction of their duties as law enforcement officers.

80. Defendant Sandino individually, and together with other officer, agreed and conspired to conceal and cover-up the facts related to his sexual assault against Ms. Castilla in a deliberate act to deny plaintiff access to the Courts.

## COUNT I

### DEPRIVATION OF CIVIL RIGHT TO PERSONAL SECURITY
### AGAINST DEFENDANTS SANDINO, AND THE CITY OF NEW YORK

81. Plaintiff repeats and realleges allegations contained in paragraphs 1-80 of this complaint as if fully set forth herein.

82. Defendant Sandino, under color of law, used malicious wanton and unwarranted force on Lilian Castilla causing physical and emotional injuries. This abuse of power and use of force constitutes a constitutional tort by Defendants Sandino, and City of New York which deprived Lilian Castilla of her constitutionally guaranteed and protected rights to personal security, to be free from unlawful seizure and from unlawful force, in violation of the Fourth, Fifth and Fourteenth amendments to the Constitution of the United States and 42 U.S.C § 1983.

## COUNT II

### VIOLATION OF PLAINTIFF'S CIVIL RIGHTS
### UNDER 1983 FOR THE SEXUAL ASSAULT AGAINST PLAINTIFF
### BY DEFENDANT DETECTIVE SANDINO

83. Plaintiff repeats and realleges allegations contained in paragraphs 1-82 of this complaint as if fully set forth herein.

84. In engaging in the conduct described, by sexually assaulting and battering, and falsely imprisoning plaintiff, defendant Detective Sandino, deprived plaintiff of her Civil Rights pursuant to 42 U.S.C § 1983. Further, as Detective employed by Defendants City of New York and the New York Police Department, defendant Sandino was acting under the color of the State law. That the aforementioned misuse of authority and power by defendant was egregious and shocking to the

conscience. As a direct result, plaintiff was caused to undergo the humiliation and indignities resulting from being compelled to engage in the physical contact and unlawful confinement described, against her will; and was caused, and will continue to undergo and endure, severe mental anguish, humiliation and economic hardship as a consequence thereof. Such deprivations were in violation of the rights secured to plaintiff by the Fourteenth Amendments of the Unites States Constitution and by Title 42 U.S.C § 1983.

## COUNT III

### CONSPIRACY TO OBSTRUCT JUSTICE
### AGAINST ALL DEFENDANTS

85. Repeats and realleges allegations contained in paragraphs 1-84 of this complaint as if fully set forth herein.

86. The Defendants, under color of law, conspired for the purpose of impeding, hindering, obstructing and defeating the due course of justice in the criminal courts and the civil courts of the State of New York relating to defendant Sandino's violent sexual assault, with intent to deny Plaintiff, Lilian Castilla, due process and the equal protection of the laws and with invidious discriminatory animus toward her as a young woman in violation of the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1985 (2).

16

## COUNT IV

### DEPRIVATION OF CIVIL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION OF LAW AGAINST ALL DEFENDANTS

87. Repeats and realleges the allegations contained in paragraphs 1-86 of this complaint as if fully set forth herein.

88. Acting under color of law, Defendants' malicious and deliberate cover up and conspiracy deprived Lilian Castilla of her right to due process and equal protection of the laws, in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C § 1983.

## COUNT V

### 42 U.S.C. § 1983 SUPERVISORY LIABILITY

89. Repeats and realleges the allegations contained in paragraphs 1-88 of this complaint as if fully set forth herein.

90. Defendants John Does, 1-10 were, at the relevant times, supervisory personnel at the 110th precinct or in the NYCPD, with oversight responsibility for Defendant Sandino and other John Doe Officers and Detectives. They were responsible for training, instruction, supervision, and discipline of defendant Sandino who sexually assaulted the plaintiff.

91. It is believed that defendants Johns Does 1-10 received complaints about the conduct of Detective Sandino and other officers in the 110th precinct, knew about past complaints, aberrant behavior, and disciplinary infractions, or, in the exercise of due diligence, would have perceived that Detective Sandino had

conduct and disciplinary problems that posed a pervasive and unreasonable risk of harm to the plaintiff.

92. Defendants John Does knew, or in the exercise of due diligence would have known that the conduct of Sandino toward plaintiff was likely to occur.

93. It is believed that defendants John Does failed to take preventative and remedial measures to guard against the sexual assault and cover-up committed by Sandino.  Had they taken appropriate action, plaintiff would not have been injured.

94. The failure of defendants John Does to supervise and discipline Detective Sandino and other officers of the 110th precinct, amounted to gross negligence, deliberate indifference, or intentional misconduct which directly caused the deprivations suffered by the plaintiff.

## COUNT VI

### 42 U.S.C. § 1983 – MONELL CLAIM

95. Repeats and realleges the allegations contained in paragraphs 1-94 of this complaint as if fully set forth herein.

96. Prior to February 16, 2008, the City developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of plaintiff, Lilian Castilla, rights.

97. It was the policy and/or custom of the City to investigate inadequately and improperly civilian complaints of police misconduct.  Instead, acts of brutality were tolerated by the City.  The Internal Affairs Bureau (IAB) has substantially failed to investigate, deliberate and discipline transgresses. IAB investigations of

18

brutality and assault rarely lead to administrative trials and when they do, and the charges are somehow sustained, the punishment is minimal, lacking any deterrent effect. Since there is no disciplinary sanction available between thirty days suspension and dismissal, and dismissal is almost always deemed too harsh, even the most brazen acts of brutality, short of murder, are resolved with a slap on the wrist. The City has been on notice for more than a generation that brutality is widespread and that particular reforms need to be implemented. From reform-minded Commissioner Patrick Murphy to the Mollen Commission twenty-five years later, the City has been repeatedly cautioned that a systemic tolerance for brutality flourishes throughout the NYCPD. The Mollen Commission report noted, "This tolerance, or willful blindness, extends to supervisors as well". Mollen Comm. Report, at 49.

98. It was the policy and/or custom to supervise and discipline officers inadequately, including defendant Sandino, thereby failing to discourage constitutional violations on the part of its police officers.

99. Police officers of the City of New York have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward or failing to accurately give evidence as to misconduct of which they are aware, thereby establishing and perpetuating a "code of silence."

100. This "code of silence" is a custom deeply ingrained in the members of the New York City Police Department so as to constitute the actual policy of the City of New York.

101. The City has been deliberately indifferent to the need for more or different training, rules and regulations relating to police officers who witness or have information regarding misconduct by fellow officers.  The City has failed to properly sanction or discipline officers who are aware of and subsequently conceal and/or aid and abet violations of constitutional rights of citizens by other New York City police officers, thereby causing and encouraging New York City police officers, including the individual defendant officers in this case, to violate the rights of citizens such as Lilian Castilla.

102. It is believed the City has maintained no system or an inadequate system of review of officers who withhold knowledge or give false information regarding misconduct by fellow officers.  This failure to identify and track such officers, including the defendant officers, or to discipline, more closely supervise, or retain such officers who engage in the "code of silence," causes New York City police officers to believe that they can engage in misconduct, secure in the knowledge that their fellow officers will neither intervene, nor give evidence against them.  These systemic deficiencies include, but are not limited to:

a) Preparation of investigative reports designed to vindicate the conduct of officers who gave false information about the misconduct of other officers, or who falsely denied knowledge about misconduct which they were in a position to observe;

b) Preparation of investigative reports which uncritically rely solely on the word of police officers and which systematically fail to credit testimony of non-police witnesses;

c) Preparation of investigative reports which omit or ignore factual information and physical evidence which contradict the accounts of police officers;

d) Issuance of public statements exonerating officers involved in such incidents prior to the completion of investigation;

e) Failure to have meaningful review of investigative reports by responsible superior officers for accuracy or completeness, including consideration of the conduct of officers who were not actively engaged in the misconduct which was the subject of the investigation, and acceptance of conclusions which are not supported by the evidence or which contradict such evidence; and,

f)  Failure to identify potential "code of silence" violations and maintain accurate records of allegations of such misconduct.

g) Issuance of false or misleading statements to the press to impugned the credibility and charades of abused citizens.

103. The City, prior to and at the time of this incident, was aware of the need for more or different training, rules, regulations, investigation and discipline relating to police officers who practice the "code of silence," and was deliberately indifferent to that need.

104. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger of harm to citizens like plaintiff and the need for more or different training and discipline are policies, practices and customs of the City of New York and have caused police officers, including the officer defendants in this case, to believe that they can violate the rights of citizens with impunity, and that their fellow officers would conceal such conduct,

including swearing falsely and committing perjury, all with the foreseeable result that officers are more likely to violate the constitutional rights of citizens.

105.   As a direct and proximate result of the City's deliberate indifference, defendants violated the plaintiffs' constitutional rights for which she suffered substantial damages.

**WHEREFORE,** plaintiff requests the following relief jointly and severally as against all of the defendants:

1.   Award compensatory damages in an amount to be determined at trial;

2.   Award punitive damages in an amount to be determined at trial;

3.   Disbursements, costs, and attorneys' fees; and

4.   For such other and further relief as to this Court may seem just and proper.

PLAINTIFFS DEMAND TRIAL BY JURY

Dated:  New York, New York
        June 9, 2009

_____
                /S/
THE LAW OFFICE OF JOSE A. MUÑIZ, P.C.
BY: JOSE A. MUÑIZ, ESQ. (JM 3101)
Attorney for Lilian Castilla
277 BROADWAY, SUITE 108
NEW YORK, NEW YORK, 10007