UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X   CIVIL No. 09 CIV 5446 (SHS)
LILIAN CASTILLA,

       PLAINTIFF,

- against -

CITY OF NEW YORK, NEW YORK CITY    PLAINTIFF'S STATEMENTS
DETECTIVE OSCAR SANDINO, TAX ID #919673   OF INDISPUTED FACTS
INDIVIDUALLY AND AS A DETECTIVE     PURSUANT TO LOCAL
OF NEW YORK CITY POLICE DEPARTMENT,    CIVIL RULE 56.1
AND POLICE OFFICERS JOHN DOE OFFICERS 1-10

       DEFENDANTS.
------------------------------------------------------------X

  Plaintiff submits this statement, pursuant to Local Rule 56.1 of the Local Rules of the United States District Courts for the Southern District and Eastern Districts of New York, along with the Declaration of Jose A. Muniz, to set forth the material facts as to which plaintiff contends there are no genuine issues to be tried.

**Defendant City of New York Statement of Facts**

1. Plaintiff agrees with the City defendant's undisputed statements of facts put forth in their local Civil Rule 56.1, as to paragraphs 1 through 6.

2. As to defendant City undisputed fact, in paragraph 7, there is a dispute in that individual defendant Sandino testified in his deposition that there were prior complaints filed against him, in his 14 years as a police officer, and he stated that he believed there were and was unaware as to how many. See Muniz Decl., Exhibit C, at pages 25-26.

3. As to defendant City undisputed fact, paragraph 8, the plaintiff disputes paragraphs 8. The City is aware of other sexual misconduct cases by officers in the NYPD, not just the

misconduct by Sandino for instance, there are numerous incidents involving NYPD officers perpetrating sexual assaults on victims with whom they are charged with protecting. In 2004, veteran police officer Luis Delgado was arrested after he was seen having sex with a thirteen year old boy Bronx Park.1 In 2005, Police officers Charles McGreean and Fernand Clerge were arrested on charges of sexually abusing a 35 year old woman in her Brooklyn apartment after pulling her over for a stop.2 In 2008, three police officers were charged with sodomizing a tattoo parlor worker at a Brooklyn subway station.3 In 2009, two NYPD officer were arraigned accused of raping an intoxicated woman after helping her home to her East Village apartment.4 Just months before, police officer Wilfredo Rosario was indicted after he allegedly entered a woman's apartment, fondled her, and then forcibly raped her.5 Rosario was still facing charges from the previous year that he sexually abused and threatened three other women.6 As a last example, and perhaps the most startling, police officer Michael Pena was charged with raping a Bronx school teacher. Pena allegedly showed his 9mm service weapon to the teacher and dragged her behind a building where he raped her. Shortly after his arrest, NYPD started to investigate whether Pena was a serial rapist.7

1. Police Officer Charged in Sodomy of Boy, NY Times, June 12, 2004
2. Al Baker, Two Officers Are Charged in Sex Attack, NY TIMES, November 22, 2005
3. Scott Shifrel, Three NYPD Cops Charged in Subway Assault of Michael Mineo, THE DAILY NEWS, December 9, 2008
4. Christine Hauser, Two Police Officers Are Arraigned on Charges of Raping Drunken Women, NY TIMES, April 29, 2009
5. Sewell Chan, Police Officer Faces Another Sex-Abuse Charge, NY TIMES, January 22, 2009
6. Anahad O'Connor, Officer Accused of Sexual Assault, NY TIMES, April 12, 2008
7. Bob Kappstatter, NYPD investigating Whether Officer Michael Pena, Charged in Teacher's Rape, is a Serial Rapist, THE DAILY NEWS, August 25, 2011

4. That on February 16, 2008 members of the NYPD and Defendant Oscar Sandino executed a search warrant in Plaintiff's home. During the search Defendant Sandino entered Plaintiff's bedroom in the presence of other male officers and ordered Plaintiff to undress without the supervision of a female police officer. (Muniz Declaration; Exhibit A, pp 1-2,3 and 4)

5. That these sexual incidents often go unreported by the NYPD due to their strong "code of silence." (Muniz Declaration; Exhibit B, p 4 Paragraph 12 K and L)

6. That on February 16, 2008 when defendant Sandino transported Castilla and a male detainee to the 110 Precinct he separated the male detainee by placing him downstairs and bringing Castilla upstairs to an isolated area of the 110 precinct. (Muniz Declaration; Exhibit D, pp 19 and 20).

7. That had the NYPD assigned a female police officer to work the second floor of the precinct were Plaintiff was detained, Sandino and the other officers would not have been alone with Plaintiff.

8. That Defendant Sandino was not the only detective that was left with Castilla alone, but he took turns with other officers in the 110 precinct that were left alone with Castilla in an unmonitored area of the precinct. This can easily be seen from the internal affairs tape recording interview (that was transcribed for the court's convenience) held on March 19, 2008, in part, with NYPD Supervisor Sgt. Ardito after Castilla was transported to the precinct ;

Sgt. McDermott: ... when you get to the[ precinct], how were the prisoners removed?
Sgt. Ardito: I directed Detective Sandino directly to take her upstairs. (P. 19) (Note 8)
Sgt. McDermott: so back to the 110, you come to the 110, I know you said you went to the desk and you sent Detective Sandino upstairs to the second floor of the 110 to guard the female, the younger female? (page 20)
Sgt. Ardito: Yes, I sent him upstairs but I had him [inaudible] or a matter of minutes because he was the arresting officer. Detective Decker went upstairs.
Sgt. McDermott: so how long was Detective Sandino upstairs with her?
Sgt. Ardito: When I got situated in the command it might have been a few minutes, it could of been ten or fifteen minutes.
Sgt. McDermott: Okay and Detective Decker goes upstairs?

8. The interview was also snipped verbatim from this Deposition, notes on page 12, and again at page 26.

Sgt. Ardito:       Yeah, she's upstairs.
Sgt. McDermott:    Alone?
Sgt. Ardito:       Yes
Sgt. McDermott:    With her, with the defendant?
Sgt. Ardito:       Yes, one-hour
Sgt. McDermott:    So at what point does Detective Sandino goes back upstairs?
Sgt. Ardito:       I don't know exactly, but he definitely went back upstairs, but I would say about an hour later because he was with one of my better detectives.
Sgt. McDermott:    Who is your better detective?
Sgt. Ardito:       Detective Rivera
Sgt. McDermott:    So when Detective Sandino when back upstairs did Detective Decker stay up there with him?
Sgt. Ardito:       I don't think so. No
Sgt. McDermott:    So is Detective Sandino alone with her upstairs?
Sgt. Ardito:       I didn't direct the second person upstairs.  I am not so sure, I didn't direct another officer upstairs.
Sgt. McDermott:    Who debriefed that female defendant?
Sgt. Ardito:       It was detective Sandino. And then I actually sent up detective Kaymore upstairs – he was up there for a while probably for two hours.
Sgt. McDermott:    Why did you want that younger defendant to go upstairs?
Sgt. Ardito:       I wanted to make sure they didn't get their stories together as to who is dealing
Sgt. McDermott:    So it was your decision to keep them separated – the male defendant and the younger female defendant?
Sgt. Ardito:       Yes

(See Muniz Declaration Exhibit D, 03-19-2008 Transcript pages 19-23)

9. That it was during this time period, and under the supervision of Sgt. Ardito, that Plaintiff was sexually assaulted and sodomized by Defendant Sandino in the female bathroom while other officers were on guard, or present in the immediate vicinity of the bathroom. (Muniz Declaration, Exhibit A, pp 7-8, Exhibit F pp 93-96, See also, City defendant's Exhibit F, pp 4-5).

10. That Sandino and other defendant John Doe officers, after plaintiff was released from central booking, went to her mother's home unannounced, and continued to intimidate her and recruit her as a Confidential Informant. (Muniz Declaration; Exhibit F, p 146-147).

11. That at no time did the defendants have a policy on the procedures on how to properly recruit female confidential informants. This lack of policy contributed to the injuries sustained by Plaintiff (Muniz Declaration; Exhibit B, Richard Rivera's Declaration, p. 3, paragraph 12 (f), (g), (i) §§ 14-16]

12. That Defendant City has failed to properly train its officers in the recruitment of female detainees, as confidential informants. (Muniz Declaration; Exhibit B, p 4 paragraph 12 (i), Paragraph 15; p. 5 paragraph 19).

13. Defendant Sandino did not receive training concerning dealing and fraternizing with female confidential informants. (Muniz Declaration, Exhibit C, pp 63-64).

14. That Detective Decker who participated in Plaintiff's arrest also stated that he interviewed Castilla alone and in the second floor of the 110 Precinct. (Muniz Declaration; as Exhibit E, p 10, 3-19-08 IAB interview of Detective Decker).

15. The Patrolman's Guide makes a distinction of not leaving female arrestees/detainees to be searched by male officers. (Muniz Declaration, Exhibit I pp 1 and 2)

16. There is no reference and/or distinction made in N.Y.P.D Interim Order 23, of not allowing male officers to search a female detainee who is being recruited as a Confidential Informant. (Muniz Declaration; Exhibit H)

17. There is no provision in Interim Order 23, for training officers and detectives in dealing and working with female detainees being recruited as confidential informants, and female confidential informants. (Muniz Declaration, Exhibit H; Exhibit B p. 3 paragraph 12 (f), (g) and (i).

18. N.Y.P.D. Interim Order 23, does not contain provisions on reporting abuse and misuse in the recruitment of female confidential informants. (Muniz Declaration Exhibit H, Exhibit B, p 4 paragraph 12 (x) and (i), p. 3 paragraph 12 (f), (g) and (l).

Dated: New York, New York
April 20, 2012

Yours, etc.,

*JOSE A. MUNIZ*

JOSE A. MUNIZ, ESQ.
Law Office of Jose A. Muniz
Attorney for Plaintiff
277 Broadway, Suite 108
New York, N.Y. 10007
(212) 964-3736

TO: **VIA ECF**

Attn: MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Karl J Ashanti, Esq.
Assistant Corporation Counsel of the
City of New York
100 Church Street
New York, N.Y. 10007

Honorable Sidney H. Stein
United States District Judge
United States District Court
500 Pearl Street
New York, NY 10007