UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

LILIAN CASTILLA

               Plaintiff,

       -against-

CITY OF NEW YORK, NEW YORK CITY
POLICE DETECTIVE OSCAR SANDINO,
TAX ID #919673 INDIVIDUALLY AND AS
A DETECTIVE OF NEW YORK CITY POLICE
DEPARTMENT, AND POLICE OFFICERS
JOHN DOE OFFICERS 1-10

              Defendants.

-------------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/6/12

09 Civ. 5446 (SHS)

Opinion

SIDNEY H. STEIN, U.S. District Judge.

    Plaintiff Lilian Castilla brings this civil rights action pursuant 42 U.S.C. §§ 1983 and 1985 against defendants the City of New York, police detective Oscar Sandino, and John Doe police officers. She alleges that Sandino, with the assistance of the John Doe police officers, sexually assaulted and repeatedly threatened her in violation of the United States Constitution. The City has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on the grounds that plaintiff fails to state a viable claim for municipal liability and that she cannot maintain any state law claims against any defendants. Because Castilla specifically states that she is not asserting any state claims, (*see* Pl.'s Mem. in Opp. at 15), there is no need to dismiss any such claims. However, plaintiff has stated plausible claims for municipal liability against the City; accordingly, the City's motion for judgment on the pleadings is denied.

1

## I.    BACKGROUND

Unless otherwise noted, the following facts are drawn from the Amended Complaint and presumed true for purposes of this motion.

On February 16, 2008, New York Police Department ("NYPD") detective Oscar Sandino and other members of the NYPD entered Castilla's apartment to execute a search warrant. (Am. Compl. ¶ 14.) Sandino followed Castilla into a bedroom and then demanded that she strip for him. (*Id.* ¶¶ 14-16.) Castilla complied with his demand. (*Id.* ¶ 17.) After questioning Castilla about her boyfriend and his drug activities and threatening her with the loss of custody of her children, detective Sandino directed that Castilla and her boyfriend be taken to the police precinct in separate cars. (*Id.* ¶¶ 20-21.)

According to Castilla, Sandino and another officer drove her around Queens, continuing to threaten her with the loss of custody of her children. (*Id.* ¶¶ 22-26.) The other officer eventually got out of the vehicle, at which point Sandino asked Castilla what she was willing to do to keep her kids and if she was willing to be "bedded." (*Id.* ¶¶ 27-30.) Sandino ultimately left the vehicle, and two other detectives drove Castilla to the NYPD's 110th Precinct, where she was held for an hour or two. (*Id.* ¶¶ 32-33.)

At the precinct, Sandino brought Castilla into an interrogation room. (*Id.* ¶ 35.) While alone with her there, Sandino asked her answer to his earlier sexual proposition. She demurred, and he again threatened to take away her kids and also threatened physical violence. (*Id.* ¶¶ 43-47.) At one point, another detective entered the interrogation room. (*Id.* ¶ 38.) Sandino and this other detective attempted to recruit Castilla as a confidential informant by using threats

against her children and referring to a potential "deal" between Castilla and Sandino. (*Id.* ¶¶ 38-40.)

Castilla asked to use the bathroom and Sandino took her there. He allegedly followed her into the bathroom, displayed his gun, ordered her to undress, and molested and sodomized her in a stall. (*Id.* ¶¶ 49-55.)   Another officer allegedly helped Sandino isolate Castilla in the bathroom and remained in the immediate vicinity of the bathroom while Castilla was in there with Sandino. (*Id.* ¶¶ 50, 56.)   None of the individual defendants present at the precinct asked why Sandino was alone with Castilla in the interrogation room or in the bathroom, and none of them reported Sandino's activity to superiors. (*Id.* ¶¶ 57-59.)

Following this incident at the precinct, according to the complaint, Sandino repeatedly called and texted Castilla in order to arrange additional sexual encounters. (*Id.* ¶¶ 61-69.) He continued to contact her even after her boyfriend's defense attorney asked him not to do so. (*Id.* ¶¶ 72-74.) Sandino also allegedly called Castilla's brother to threaten removal of her children if she did not return his calls. (*Id.* ¶¶ 75-78.) Moreover, when an Administration for Children's Services caseworker was interviewing Castilla at her parents' apartment on February 19, 2008, Sandino and another officer showed up. (*Id.* ¶ 80.) Sandino took Castilla into a room and tried to intimidate her into staying silent about the sexual relationship he was pursuing with her. (*Id.* ¶¶ 83-87.)

In March 2008, Castilla met with the NYPD Internal Affairs Bureau (the "IAB") and provided recordings of calls Sandino had made to her and copies of text messages he had sent her. (*Id.* ¶ 88.) The IAB gave her a recording wire for a meeting with Sandino, which took place on March 11, 2008. (*Id.* ¶ 89.) At their meeting, Sandino was apparently suspicious of

3

Castilla and made threats. (*Id.* ¶ 90.)  Castilla was so frightened by Sandino that the IAB

"whisked her away." (*Id.* ¶ 91.)

According to Castilla, the individual defendants who acted in concert with Sandino

continue to work for the NYPD and have not faced any charges as a result of their misconduct.

(*Id.* ¶ 92.)  Castilla also alleges that the individual defendants conspired to obstruct and cover

up any investigation of her claims. (*Id.* ¶¶ 95-99.)

Castilla commenced this action in 2009.  She brings various civil rights claims against

individual officers and municipal liability claims against the City.  The municipal liability

claims are the subject of this motion.

Castilla specifically alleges that the City has a "policy and practice which provides

practically unimpeded control over female suspects and prospective female confidential

informants, and which fails to explicitly prohibit the use of sexual dominance and gender

exploitative control tactics that seek to further investigative ends and individual officer[s']

personal prurient desire[s]." (*Id.* ¶ 12.)  She further alleges inadequate training, supervision, and

discipline of officers, as well as a deeply ingrained "code of silence" regarding police

misconduct of this type. (*Id.* ¶¶ 126-129.)  As a result of these policies and practices, the City

has allegedly "exhibit[ed] deliberate indifference to the constitutional rights of its citizens."

(*Id.* ¶ 125.)

Moreover, according to Castilla, the City "has been on notice of a significant and

pervasive problem of police officers' use of their position and power to abuse female suspects,

prospective confidential informants, and confidential informants." (*Id.* ¶ 100.)  In particular,

she claims that "defendant Sandino had prior incidences of sexual abuse against females within

his custody and control." (*Id.* ¶ 13.)  She also refers to various news reports of incidents

4

involving other police officers who isolated females and then sexually assaulted them while they were in the custody or control of those officers. (*Id.* ¶¶ 105-06, 109.)

In addition, the Court takes judicial notice of the fact that Sandino pled guilty to two counts of deprivation of civil rights, one of which arose from events that Castilla has alleged in this complaint, at least as far as Sandino's own activities are concerned. In May of this year, Sandino was sentenced by a federal judge principally to 24 months' imprisonment for those crimes. (*See* Judgment in *United States v. Sandino*, Cr. 10-331 (E.D.N.Y. May 19, 2010).)

As noted above, the City now moves for judgment on the pleadings pursuant to Rule 12(c) on the ground that Castilla has failed to state a claim for municipal liability.

## II.  DISCUSSION

### A.  Legal Standard

In deciding a motion under Rule 12(c), courts apply the same standard that applies on a motion to dismiss a claim for relief pursuant to Rule 12(b)(6). *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). Accordingly, a court accepts the truth of the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir.2006). A complaint should be dismissed if it fails to set forth "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556).

5

B. Municipal Liability

To sustain a claim for relief pursuant to section 1983 against a municipal defendant, a plaintiff must show (1) the existence of an officially adopted policy or custom and (2) a causal connection between the custom or policy and the deprivation of a constitutional right. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir. 1992).

A plaintiff may demonstrate the existence of a policy or custom in a variety of ways. First, she may provide evidence of a formal policy officially adopted by the municipality. *Monell*, 436 U.S. at 690. Second, a single unconstitutional act or decision, when taken by an authorized decision-maker, may be considered a policy and thus subject a municipality to liability. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404-06 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-84 (1986). Third, a policy may be established by showing that the acts of the municipal agent were part of a widespread practice that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware. *Brown*, 520 U.S. at 403-04; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Monell*, 436 U.S. at 690-91. Fourth, where a municipality's failure to provide adequate training or supervision of its agents rises to the level of deliberate indifference, section 1983 liability may lie against the municipality. *Brown*, 520 U.S. at 407; *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Cash v. Cnty. of Erie*, 09-4371, 2011 WL 3625093, at *7 (2d Cir. Aug. 18, 2011). However, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

C. Application

Castilla does not claim that the City's liability pursuant to *Monell* and its offspring arises from a formal City policy or an unconstitutional act by an authorized decision-maker. Rather, she alleges, under the third and fourth theories, a widespread custom of at least tolerating male police officers' sexual misconduct, and a failure to train, supervise, and/or discipline male police officers in connection with their handling female detainees and informants. Taking plaintiffs' allegations as true, the Court finds that Castilla has sufficiently pled claims for *Monell* liability against the City of New York.

This finding is based, in part, on the Second Circuit's recognition that "[it] is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004). The Second Circuit has not yet addressed whether *Iqbal* has heightened the pleading requirements for such a municipal liability claim, but district courts in this Circuit have continued, post-*Iqbal*, to apply the pleading standard articulated in *Amnesty* to a *Monell* claim based on a failure to train. *See Ferrari v. Cnty. of Suffolk*, No. 10 Civ. 4218, 2011 WL 2297125, at *9 (E.D.N.Y. Jun. 7, 2011); *Williams v. City of New York*, 690 F. Supp. 2d 338, 346 (S.D.N.Y. 2010); *Michael v. County of Nassau*, No. 09 Civ. 5200, 2010 WL 3237143, at *4 (E.D.N.Y. Aug. 11, 2010). Thus, in assessing the sufficiency of plaintiff's *Monell* claims—particularly the failure to train claim—the Court keeps in mind that plaintiff has not yet had the full benefit of discovery.

The City's position cannot be ignored. The City contends that this case simply concerns an isolated incident involving a single rogue police detective. The City may be right.

However, the alleged facts, taken as true for purposes of this motion, plausibly suggest otherwise. Plaintiff alleges that multiple detectives and officers helped Sandino threaten, abuse, and sexually assault Castilla over many hours and in many locations, including at a police precinct. The complaint specifically alleges concerted action by other police officers in addition to Sandino who were not supervised and at least not immediately stopped or disciplined. Sandino is alleged to have continued for weeks after the assault to contact, proposition, and threaten Castilla. When Sandino paid Castilla a visit at her family's home, Sandino was accompanied by another officer. Furthermore, Castilla alleges that the police officers maintained a "code of silence" to cover up their misconduct.

In *Michael v. County of Nassau*, the U.S. district court in the Eastern District of New York found, on a motion to dismiss decided under *Iqbal*, that an informal custom "of at least tolerating police misconduct" and/or a failure to properly train police officers could be inferred where the alleged conduct took place over several hours, including at police headquarters, and several officers participated in the repeated denials of the plaintiff's rights. 2010 WL 3237143, at *4. Castilla, like the plaintiff in the *Michael* case, alleges a string of incidents in which she was repeatedly victimized by multiple officers in multiple locations, both on and off City property.

More than that, Castilla alleges various other instances of male police officers taking sexual advantage of females under their custody or control. In *Ferrari v. County of Suffolk*, which was decided after *Iqbal*, the court allowed a *Monell* claim to survive a motion to dismiss in light of allegations of two instances of unconstitutional conduct in addition to plaintiff's own claim. 2011 WL 2297125, at *9. *See also Colon v. City of New York*, Nos. 09 Civ. 8-9, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009); *cf. Cash*, 2011 WL 3625093 at *9 (finding that

8

a jury could reasonably conclude that a single prior complaint of sexual exploitation, in light of prison guards' duty to protect prisoners, could put a municipality on notice that its existing policy was insufficient to deter such misconduct). Although the City challenges the admissibility of the evidence plaintiff cites as relevant examples of police misconduct, the Court need not decide that issue at this time.

Finally, the City argues that plaintiffs' allegations do not demonstrate an unconstitutional policy or custom, but rather show the opposite: a readiness on the part of the City to investigate and discipline police officers who misbehave. In particular, the City points to the IAB's responsiveness to Castilla's IAB complaint and the fact that Sandino was ultimately punished for his wrongdoing. While these facts inure to the City's benefit on this motion, Castilla also alleges that not all the individual perpetrators have been investigated and disciplined. In any event, the issue of whether the City eventually investigates and disciplines employees accused of misconduct is distinct from whether the City was deliberately indifferent to the violation of citizens' constitutional rights in the first place. In other words, even if the City took corrective action, its training and supervision of male officers vis-à-vis female detainees and informants still may have been inadequate.

The Court is not evaluating the ultimate merits of plaintiff's *Monell* claims here. The Court is simply finding that the allegations of very serious police misconduct, supported by adequate facts, raise an inference of municipal liability that is plausible enough to permit the claims to proceed.

## III. CONCLUSION

Accordingly, for the reasons set forth above, the City's motion for judgment on the pleadings with respect to Castilla's claims against the City is denied. Plaintiff is entitled to

discovery regarding the City's policies and practices regarding training, supervision, and

discipline in connection with male officers' handling of female suspects, prospective

confidential informants, and informants.


Dated: New York, New York
      August 22, 2011

Sidney H. Stein, U.S.D.J.

10