UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LILIAN CASTILLA,

                              Plaintiff,

        –against–                                          09 Civ. 5446 (SHS)

CITY OF NEW YORK, NEW YORK CITY
DETECTIVE OSCAR SANDINO, individually                      OPINION & ORDER
and as a detective of New York City Police
Department, and POLICE OFFICERS JOHN
DOE OFFICERS 1–10,

                              Defendants.

SIDNEY H. STEIN, U.S. District Judge.

    Lilian Castilla brings this action pursuant to 42 U.S.C. §§ 1983 and
1985 against the City of New York and former NYPD detective Oscar
Sandino for violations of her civil rights.  Castilla alleges that Sandino,
with the assistance of several unnamed police officers,[1] sexually assaulted
and repeatedly threatened her in violation of her constitutional rights.  The
City now moves for summary judgment on the ground that it is not liable
as a matter of law pursuant to the well known case of *Monell v. Department
of Social Services*, 436 U.S. 658 (1978).  For the reasons set forth below, the
City's motion is granted.

## I.   BACKGROUND

    The following facts are drawn from this Court's "'assiduous review'"
of the record.[2]  *Jordan v. Viacom Outdoor Grp.*, 475 F. Supp. 2d 440, 442 n.1

---

[1]    Although the Complaint names "John Doe Officers 1–10" as defendants, plaintiff
has not served any specific officers apart from Sandino with a summons and
amended complaint.

[2]    Because this Court has conducted its own review of the record, it need not
resolve the City's evidentiary objections to plaintiff's purported expert and three
transcripts of what appear to be NYPD Internal Affairs Bureau interviews.  The

(S.D.N.Y. 2007) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)).  This Court views, as it must, "the evidence in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor."  *Fabozzi v. Lexington Ins. Co.*, 601 F.3d 88, 90 (2d Cir. 2010) (quotation marks omitted).  Importantly, Sandino admitted the central allegations against him when he pled guilty in October 2010 to one count of a misdemeanor information charging him with violating Castilla's civil rights.[3]

### A.   Sandino's Sexual Abuse of Castilla

On February 16, 2008, Sandino and several other police officers entered Castilla's apartment to execute a search warrant as part of a drug investigation of her then-boyfriend.  (Castilla Aff. ¶ 1, annexed to plaintiff's 56.1 Statement as Exhibit A.)  At some point after entering, Sandino ordered Castilla into a bedroom where he forced her to undress while he watched.  (*Id.* ¶¶ 1–4.)  As Castilla stripped down to her underwear, Sandino made sexual comments.  (*Id.* ¶¶ 3–4.)  He left the room when a female officer knocked on the door and entered the bedroom.  (*Id.* ¶ 4.)

A few hours after the arrival of the police, Sandino directed that Castilla be taken to the 110th Precinct.  (*Id.* ¶¶ 7, 18.)  Sandino took Castilla in his car along with Vito Ardito, who was an NYPD sergeant and the supervising officer for the execution of the search warrant.  (*Id.* ¶ 8; Pl.'s 56.1, Ex. D at 19; IAB Rpt. at 3, annexed to the Ashanti Declaration as Exhibit F.)  During the ride, Sandino threatened Castilla with the removal of her children by the City's Administration for Children's Services ("ACS") if she did not agree to have sex with him.  (Castilla Aff. ¶¶ 10–17; Sandino Plea Tr. at 23, *United States v. Sandino*, No. 10-cr-331 (E.D.N.Y.), Dkt. No. 24.)

---

opinions offered by plaintiff's expert add little, if any, value; moreover, the facts contained in the transcriptions do not create a genuine issue of material fact.  *See Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599, 624 n.13 (S.D.N.Y. 2009).

[3]   At the same time, Sandino pled guilty to a separate count for violating the civil rights of another, unnamed woman.

At the precinct, Sandino brought Castilla into an interrogation room and asked for her answer to his sexual proposition.  (Castilla Aff. ¶ 20.)  Castilla remained silent as Sandino again threatened to take away her children.  (*Id.* ¶¶ 20–21.)  At one point, another detective entered the interrogation room and he and Sandino attempted to recruit Castilla as a confidential informant,[4] again suggesting that her children could be taken away from her if she refused.  (*Id.* ¶¶ 23–25; Pl.'s 56.1, Ex. F at 83–84, 146.)  When the other detective left the room, Sandino continued to demand an answer to his sexual proposition and physically threatened Castilla.  (Castilla Aff. ¶¶ 27–32.)

While still in the interrogation room with Sandino, Castilla asked permission to use the bathroom.  (*Id.* ¶ 34; Sandino Plea Tr. at 23.)  Sandino handcuffed Castilla and escorted her to the bathroom, but when Castilla attempted to leave the stall she was using, Sandino blocked her way, displayed his sidearm, and again ordered Castilla to strip.  (Castilla Aff. ¶¶ 37–38; Pl.'s 56.1, Ex. F at 95.)  As Sandino admitted during his plea, he "then proceeded to touch [Castilla's] vaginal area and forced [her] to perform oral sex on [him]."  (Sandino Plea Tr. at 23.)  After sodomizing her, Sandino told Castilla, "Now I know I can trust you."  (Castilla Aff. ¶ 40.)  Castilla states that she saw several other NYPD officers in the area as she left the bathroom with Sandino.  (*Id.* ¶ 41.)

Over the next few weeks, Sandino repeatedly called and texted Castilla in an effort to arrange sexual encounters.  (*Id.* ¶¶ 46–53; IAB Rpt. at 3–4.)  Castilla did not return Sandino's calls and asked her boyfriend's criminal defense attorney to try to get Sandino to stop contacting her.  (Castilla Aff. ¶¶ 56–58.)  Sandino allegedly responded by threatening Castilla's brother and repeating his threats to have her children removed from her.  (*Id.* ¶¶ 59–60.)  Sandino even showed up at Castilla's apartment with another officer during a visit by a caseworker from the ACS.  (*Id.* ¶¶ 63–64.)  During that visit, he allegedly took Castilla into a room and tried to intimidate her into staying silent about the sexual relationship he was

---

[4]     Sandino testified during his deposition that he "believe[d]" he had attempted to recruit Castilla as a confidential informant.  (Pl.'s 56.1, Ex. C at 57.)

pursuing.  (*Id.* ¶¶ 67–69.)  He also reiterated his request that Castilla work as a confidential informant for the NYPD.  (Pl.'s 56.1, Ex. F at 146–47.)

In early March 2008, Castilla decided to report Sandino's severe misconduct and arranged a meeting with the NYPD's Internal Affairs Bureau ("IAB").  (Castilla Aff. ¶ 72.)  At that meeting, Castilla provided IAB investigators with recordings of Sandino's calls to her and copies of his text messages.  (*Id.*; IAB Rpt. at 3–4.)  The IAB then set up a meeting between Castilla and Sandino at a diner in Queens and recorded their conversation.  (Castilla Aff. ¶ 73.)  Sandino was suspicious of being recorded and made a final threat against Castilla.  (*Id.* ¶ 74.)  Castilla became so frightened that, according to her, IAB officers had to hurry her away from the scene.  (*Id.* ¶ 75.)

Sandino's abuse of Castilla led to his criminal prosecution in the U.S. District Court for the Eastern District of New York.  *See United States v. Sandino*, No. 10-cr-331 (E.D.N.Y.); IAB Rpt. at 5.  On October 8, 2010, Sandino pled guilty to depriving Castilla of her rights under color of law in violation of 18 U.S.C. § 242, and admitted the conduct that gave rise to Castilla's lawsuit.  (Sandino Plea Tr. at 22–23.)[5]  Sandino was subsequently sentenced principally to 12 months' imprisonment for violating Castilla's constitutional rights and a second, consecutive, 12-month term for similarly violating another woman's rights subsequent to his abuse of Castilla.  (*Id.* at 23–24; Sandino Sentencing Tr. at 39, No. 10-cr-331, Dkt. No. 44.)

### B.  Policies and Training Concerning Confidential Informants and Arrestees

As noted above, Sandino and another NYPD detective are alleged to have attempted to recruit Castilla as a confidential informant while she was held at the 110th Precinct.  The NYPD's policies concerning the recruitment and handling of confidential informants are contained in

---

[5]    The Court takes judicial notice of these court filings.  *See, e.g., Giraldo v. Kessler*, 694 F.3d 161, 164 & n.2 (2d Cir. 2012) (taking judicial notice of related criminal action); *S.E.C. v. Aragon Capital Advisors, LLC*, No. 07 Civ. 919, 2011 WL 3278907, at *12 (S.D.N.Y. July 26, 2011) (taking judicial notice of allocution).

NYPD Patrol Guide Interim Order 23, Series 2006. ("Interim Order 23," annexed to plaintiff's 56.1 Statement as Exhibit H.)  Although Interim Order 23 concerns primarily the registration and use of confidential informants, it also sets out restrictions and special conditions NYPD members are to follow when recruiting certain potential confidential informants.  (*Id.* at 9.)  These apply to any potential confidential informant who is under the age of 18; on probation or parole; wanted on a warrant; or a defendant in an active criminal case.  (*Id.*)  Interim Order 23 contains no special conditions or restrictions pertaining to recruitment of female confidential informants or confidential informants of the opposite sex from the recruiting officer.

This policy stands in contrast to the NYPD policies that govern searches and strip-searches of female arrestees.  (Pl.'s 56.1, Ex. I.)  According to these policies, a "female prisoner[] [should be] searched, in all possible privacy, by a female police attendant or female police officer." (*Id.* at 146.)  Strip searches "will be conducted by a member of the same sex as the arrested person in a secure area in utmost privacy and with no other arrestee present." (*Id.* at 164.)

Sandino testified at his deposition in this action that he received no special training "in terms of dealing with female confidential informants." (Pl.'s 56.1, Ex. C at 23.)  He was aware that there were department guidelines for the use of confidential informants and agreed that a supervisor would need to sign off on their recruitment, but did not know if specific guidelines covered the treatment of female confidential informants.  (*Id.* at 63–64, 93.)  Sandino believed that there were no differences between the treatment or recruitment of female and male confidential informants.  (*Id.* at 93.)  In his words, "Females, they get treated exactly like the male confidential informants, same paperwork, same procedure." (*Id.*)  Sandino was aware of the regulations governing searches of female arrestees.  (Ashanti Decl., Ex. E at 23–24, 32, 46.)

### C.   Procedural Background

Castilla's Amended Complaint asserts five causes of action against Sandino and the City pursuant to 42 U.S.C. § 1983 and one cause of action against the same defendants for conspiring to violate Castilla's constitutional rights pursuant to 42 U.S.C. § 1985.  The Court stayed this action between March 2010 and May 2011 due to the then-pending criminal action against Sandino.  After Sandino pled guilty and was sentenced, the Court returned this action to its active calendar.  The City subsequently moved unsuccessfully for judgment on the pleadings.  *See Castilla v. City of N.Y.*, No. 09 Civ. 5446, 2012 WL 3871517 (S.D.N.Y. Sept. 6, 2012).  Following discovery proceedings, the City has now moved for summary judgment on plaintiff's *Monell* liability claim against it.

## II.   DISCUSSION

"Summary judgment may be granted only when the moving party demonstrates that there is no genuine issue as to any material fact and that . . . [it] is entitled to a judgment as a matter of law."  *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir. 1995) (quotation marks omitted); *accord Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Where, as here, the nonmoving party bears the ultimate burden of proof at trial, "the movant may show prima facie entitlement to summary judgment" by demonstrating the absence of a genuine issue of material fact based on insufficiencies in the record. *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex,* 477 U.S. at 322–23).

### A.   Municipal Liability Pursuant to 42 U.S.C. § 1983

Pursuant to 42 U.S.C. § 1983, any "person" acting under color of law that deprives a citizen of rights secured by the Constitution "shall be liable to the party injured."  A municipality, such as the City of New York, is a "person" that can be held liable pursuant to section 1983.  *See Monell*, 436 U.S. at 690.  The City, however, is not vicariously liable for the actions of its employees:  to succeed in her claim, Castilla must demonstrate that a

6

City custom, policy, or usage was the moving force behind her injury. *See Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404–05 (1997); *Jones v. Town of E. Haven*, 691 F.3d 72, 80–81 (2d Cir. 2012).

A plaintiff may demonstrate the existence of a policy, custom, or usage in a variety of ways. First, she may provide evidence of a formal policy officially adopted by the municipality. *Monell*, 436 U.S. at 690. Second, a single unconstitutional act or decision, when taken by an authorized decision-maker, may be considered a policy and thus subject a municipality to liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008). Third, a policy may be established by showing that the acts of the municipal agent were part of a widespread practice that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware. *Bryan Cty.*, 520 U.S. at 404; *Jones*, 691 F.3d at 81. Fourth, where a municipality's failure to provide adequate training or supervision of its agents rises to the level of deliberate indifference, section 1983 liability may exist against the municipality. *Connick v. Thompson*, 131 S. Ct. 1350, 1359–60 (2011); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). As set forth below, the law and factual record in this action do not support municipal liability based on any of these theories.

### 1. *Sandino and Ardito Are Not Policymakers*

Plaintiff puts forward Sandino, at the time an NYPD detective, and Ardito, an NYPD sergeant, as City employees whose unilateral actions can create municipal liability. However, neither Sandino nor Ardito are "policymakers" for *Monell* purposes. *See Jeffes v. Barnes*, 208 F.3d 49, 57–58 (2d Cir. 2000). The U.S. Court of Appeals for the Second Circuit has held that an NYPD sergeant does not rise to the level of a final decision-maker whose actions can create a municipal policy, a conclusion that equally applies to the lower ranking detectives. *See Anthony v. City of N.Y.*, 339 F.3d 129, 139–40 (2d Cir. 2003); *Velasquez v. City of N.Y.*, No. 08 Civ. 8478, 2012 WL 232432, at *6 (S.D.N.Y. Jan. 25, 2012). The actions of Sandino and Ardito cannot, by themselves, impose liability on the City.

### 2.  *Failure to Train*

Castilla's principal argument opposing summary judgment is that the City failed to train Sandino in the proper method of recruiting female confidential informants, directly leading to the deprivation of her constitutional rights.  "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may" trigger *Monell* liability.  *Connick*, 131 S. Ct. at 1359.  To be held liable, the City's failure to train must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'"  *Id.* (alteration in original) (quoting *Canton*, 489 U.S. at 388).  Thus, a plaintiff must prove that municipal policymakers "are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," but nevertheless the city officials choose to retain that program.  *Id.* at 1360.

Usually, plaintiffs rely on a "pattern of similar constitutional violations by untrained employees" to show deliberate indifference on the part of city policymakers.  *Id.*  Here, however, Castilla has not produced any evidence whatsoever that any policymaker was aware of any other violation by a member of the NYPD concerning the recruitment of confidential informants, or that any such violations had in fact occurred.  None of the newspaper articles or other court cases that plaintiff cites—the sum total of her evidence on this point—concern confidential informants, let alone their recruitment, or even the interrogation of female arrestees.[6]  (*See* Pl.'s Mem. in Opp'n at 9–11.)

Castilla attempts to skirt this requirement by relying on *Cash v. County of Erie*, 654 F.3d 324 (2d Cir. 2011), where the Second Circuit found that a single prior incident of sexual contact between a female prisoner and prison guards placed the municipality on notice that its training in this

---

[6]  Although newspaper articles are inadmissible to prove the truth of the matter asserted, *see, e.g.*, *Allen v. City of N.Y.*, 480 F. Supp. 2d 689, 720 (S.D.N.Y. 2007), these articles are admissible to show notice to the City of allegations of misconduct.  *See DT v. Somers Cent. Sch. Dist.*, 588 F. Supp. 2d 485, 495 (S.D.N.Y. 2008), *aff'd*, 348 F. App'x 697 (2d Cir. 2009).

area was inadequate.  *See id.* at 337–38.  However, that holding was based on a state penal statute that "pronounces prisoners categorically incapable of consenting to any sexual activity with guards and subjects guards to criminal liability for such conduct."  *Id.* at 335 (citing N.Y. Penal Law §§ 130.05(3)(e)–(f), 130.25(1), 130.60(1)).  This statutory framework extinguished any distinction between types of sexual contact between guards and prisoners, allowing substantially different forms of sexual misconduct to constitute a pattern of similar constitutional violations.  *See id.* at 336–37.  Castilla makes no attempt to argue that Sandino was acting under similar statutory conditions when attempting to recruit confidential informants.

Because Castilla has not set forth any facts to show a pattern of similar conduct in order to establish that there was a City policy of failing to train police officers, her only available avenue is the "'single-incident' liability that [the U.S. Supreme] Court hypothesized in *Canton*."  *Connick*, 131 S. Ct. at 1361.  Under this theory, a city could be held liable for a single instance of misconduct by an untrained low-level employee if, under the circumstances, the unconstitutional consequences of this failure to train were "patently obvious."  *Id.*

The Second Circuit has established three requirements that a plaintiff must satisfy to prove such single-incident liability.  First, a city policymaker must know to a moral certainty that his or her employees will confront the type of situation that gave rise to plaintiff's action; second, this situation must present the employee with a difficult choice that would be alleviated by training; and third, making the wrong choice in such a situation will frequently deprive citizens of their constitutional rights.  *See Walker v. City of N.Y.*, 974 F.2d 293, 297–98 (2d Cir. 1992).

Assuming that Castilla were able to show that the City knew to a moral certainty that its officers would recruit female or opposite-sexed confidential informants—and she offers no evidence to support this conclusion—her arguments fail when it comes to satisfying the remaining two elements.  Castilla presents no evidence to show that recruiting female confidential informants will frequently confront NYPD officers with difficult choices of law that would be alleviated by training, and no

evidence that making the wrong choice will frequently deprive these potential confidential informants of their constitutional rights. *See Rivera v. Metro. Transit Auth.*, 750 F. Supp. 2d 456, 464 (S.D.N.Y. 2010). It beggars common sense to posit that Sandino faced a difficult choice as to whether or not to coerce sex from Castilla and that training would have alleviated that conundrum. The existence of a City policy concerning searches of female arrestees cannot single-handedly prove these required elements. In sum, plaintiff has offered conjecture alone to support her failure to train theory; conjecture cannot defeat the City's motion for summary judgment. *See Stevens v. Metro. Transp. Auth. Police Dep't*, 293 F. Supp. 2d 415, 422 (S.D.N.Y. 2003); *Warren v. Westchester Cty. Jail*, 106 F. Supp. 2d 559, 567 (S.D.N.Y. 2000).

### 3.   Failure to Supervise

Plaintiff's final theory of municipal liability derives from what Castilla asserts is the City's "custom of taking no action against its police officers when they violate an individual's rights." (Pl.'s Mem. in Opp'n at 10.) The Court construes this argument to set forth a failure to supervise theory of liability. *See Reynolds v. Giuliani*, 506 F.3d 183, 191–92 (2d Cir. 2007). The City would be liable under this theory if "a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious' and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) (quoting *Vann v. City of N.Y.*, 72 F.3d 1040, 1049 (2d Cir. 1995)). Castilla cannot satisfy a single one of these elements.

First, the record in this litigation contains no evidence that any City policymaker had notice that would lead her to conclude that corrective action or supervision of Sandino was required. Neither of Castilla's two attempts to prove notice—through Sandino's disciplinary history and by prior acts of other, unrelated NYPD officers—avails her. During Sandino's deposition, he testified that he "believe[d] there were" complaints filed against him during his time as an NYPD officer. (Pl.'s 56.1, Ex. C at 26.) But the record does not include any complaints—apart from the IAB

Report investigating Castilla's allegations—and Sandino's testimony does not reveal if any other complaint, if it existed, concerned sexual abuse. Unsurprisingly, the record also does not contain any evidence of the response of policymakers to any such complaint against Sandino. Castilla also cites as evidence of the City's notice newspaper accounts and lawsuits involving prior examples of NYPD officer sexual abuse. But none of these incidents is alleged to have involved Sandino, the recruitment of potential confidential informants, or even police interrogations. In sum, Castilla has not shown that any policymaker was aware of any prior abuse by Sandino sufficient to give rise to an obvious inference that supervision or corrective action was necessary.[7] This meager evidentiary record is not sufficient to defeat summary judgment. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 95 (2d Cir. 2007).

Second, because the record is bereft of any evidence concerning any action by any municipal policymaker, Castilla also fails to show the deliberate indifference required for *Monell* liability to attach. Although a plaintiff is not required to show deliberate indifference in any specified manner, *see Amnesty Am.*, 361 F.3d at 129, Castilla does not provide direct evidence that any policymaker ignored even a single prior act of sexual abuse. Indeed, the articles and cases Castilla relies upon to show notice all involve criminal prosecutions of the abusive officers. The articles show that far from being deliberately indifferent, the City actively responded to prior allegations of sexual misconduct by other police officers. In sum, Castilla has not created a genuine issue of material fact concerning her

---

[7]    This conclusion equally forecloses municipal liability if Castilla's failure to supervise argument is instead interpreted as an argument that the City had a widespread custom of ignoring constitutional violations. Plaintiff has not shown the existence of any pattern of activity—let alone a pattern that was "so persistent that it must have been known to supervisory authorities," as is required to prove municipal liability under this theory. *Jones v. Town of E. Haven*, 691 F.3d 72, 85 (2d Cir. 2012).

failure to supervise theory of liability.[8]  *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).

### B.   Municipal Liability Pursuant to 42 U.S.C. § 1985

Section 1985 of title 42 U.S.C. prohibits two or more persons—including municipalities—from conspiring to violate the civil rights of another person.  *See Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979).  "As in the case of a claim under § 1983, there can be no liability against the City under § 1985 absent a municipal policy, custom or practice."  *Brown v. City of N.Y.*, 306 F. Supp. 2d 473, 478 (S.D.N.Y. 2004).  Because this Court has concluded that no genuine issue of material fact exists concerning the existence of a municipal policy, custom, or practice, it must also conclude that Castilla's section 1985 claim fails as a matter of law.

### III.  CONCLUSION

Lilian Castilla was the victim of a shocking sexual assault committed by a member of the New York City Police Department.  That man is now serving a term in prison for his crimes.  But shocking crimes alone cannot impute liability to the City of New York.  Plaintiff has had ample opportunity to seek evidence to prove the existence of a municipal policy, custom, or usage, but her attorney has failed to develop a record sufficient to survive a motion for summary judgment.  Because Castilla has failed to create a genuine issue as to any material fact, this Court grants the City's

---

[8]     The report of Castilla's purported expert, Richard Rivera, does not change this Court's conclusion.  (Pl.'s 56.1, Ex. B.)  Rivera does opine that Castilla "was not kept safe while in the custody and control at the 110 Precinct by defendant Oscar Sandino or his direct supervisor, Sgt. Ardito [and that] [t]his type of behavior by these officers can be said to be business as usual that has been on going for some time."  (*Id.* ¶ 14.)  However, as noted above, Ardito and Sandino are not policymakers whose actions or inactions can lead to liability on the part of the City.  Further, although Rivera notes that "[t]here exists within American policing and within the a [sic] 'code of silence' whereby officers are conditions [sic] not to report the misdeeds and misconduct of other officers" (*id.* ¶ 12(k)), he also opines that within the NYPD, "[t]here is strict enforcement of rules and discipline is meted out for violations . . . ."  (*Id.* ¶ 5.)  In short, Rivera's conclusory and contradictory opinions cannot make up for the dearth of facts supporting Castilla's theories of section 1983 liability.

motion.  This action will now proceed against Sandino.  Plaintiff has thirty days from the entry of this Order in which to move for summary judgment in her favor against Sandino.

Dated:   New York, New York
             November 14, 2012

SO ORDERED:

Sidney H. Stein, U.S.D.J.